Thomas M. North, Esquire (TN5204)
53 Newton Avenue
Woodbury, NJ 08096
(856) 384-8799/fax 384-6638
Attorney for Plaintiffs Daniel Grumbine and Graham Bottrell, Jr.

| | | |
|---|---|---|
| IN RE<br><br>NICHOLAS L. AZEGLIO JR.<br><br>Debtor.<br>———————————————<br>DANIEL K. GRUMBINE and<br>GRAHAM P. BOTTRELL, JR.<br><br>Plaintiffs,<br><br>vs.<br><br>NICHOLAS L. AZEGLIO JR.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br>CASE NO. 09-16476 (JHW)<br><br>CHAPTER 7<br><br>Honorable Judith H. Wizmur<br><br><br>Adversary Proceeding No. 09-1914 (JHW)<br><br><br>Hearing Date:  9/14/09, 10:00 a.m.<br>ORAL ARGUMENT REQUESTED |

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, HOLDING DEBT NON-DISCHARGEABLE FOR FRAUD UNDER 11 U.S.C. § 523(a)(2)(A)

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ……………………………………………………….. iii

DISCLOSURE OF MOTION FILED IN SIMILAR BANKRUPTCY CASE ………….... vi

PRELIMINARY STATEMENT ……………………………………………………. 1

PROCEDURAL STATEMENT ……………………………………………………... 2

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ……………………..…….. 4

LEGAL ARGUMENT …………………………………………………………. 5

I.  THE DOCTRINE OF ISSUE PRECLUSION APPLIES IN THIS CASE……………... 5

    (A).    The Debtor Denies Issues Already Decided in a Prior Litigation …………. 5

    (B).    Summary of Issues Previously Decided by State Court …………………… 6

        *Court Findings:  Agreement of Sale Giving Rise to Duty* ……………... 6
        *Court Findings:  Debtor's Status* ……………………………..……………... 6
        *Court Findings:  Sellers' Knowledge of Tank*…………….…………….. 6
        *Court Findings:  Sellers' Misrepresentation*…………………………….... 7
        *Court Findings:  Debtor's Knowledge of Tank, and Debtor's Knowledge of*
        *Sellers' Misrepresentation to Plaintiffs* ………………........................ 7
        *Court Finding as to Consumer Fraud*……………………………........... 7
        *Court Finding as to Damages Caused by Consumer Fraud* ………… 8

    (C).    Foundational Law of Issue Preclusion………………………... 8

    (D).    The Five-Part Test for Application of Issue Preclusion……………………. 9

        First Element of Issue Preclusion.  ……………………………………. 10
        Second Element of Issue Preclusion.  …………………………..… 11
        Third Element of Issue Preclusion.  …………………………………..… 12
        Fourth Element of Issue Preclusion.  …………………………………... 12
        Fifth Element of Issue Preclusion ………………………………….… 12
        Summary of Issue Preclusion Analysis.  ………………………..…… 12

II.  THE DEBT SHOULD BE HELD NON-DISCHARGEABLE FOR FRAUD, UNDER
*11 U.S.C. § 523(a)(2)(A)* …………………………………………………...… 13

    (A).    Requirements of *11 U.S.C. § 523(a)(2)(A)*…………………………. 13

(B).    The First Element of the *523(a)(2)(A)* test:
        The Debtor Made a Misrepresentation…………………………..……………    15

        The Debtor's Common Law Duty to Disclose Information. ……..    16
        The Debtor's Statutory Duty……………………………………    16
        Summary of The First Element of the 523(a)(2)(A) test………….    19

(C).    The Second Element of the 523(a)(2)(A) test:
        Knowledge of the Falsity of the Representations…………………………    20

(D).    The Third Element of the 523(a)(2)(A) test:  The Debtor Made the
        Representation, with the Intention and Purpose of Deceiving the Creditor…    20

(E).    The Fourth Element of the 523(a)(2)(A) test:
        The creditor relied on such representation …………………………………    22

(F).    The Fifth Element of the 523(a)(2)(A) test:  The creditor sustained the
        alleged loss and damage as a proximate result of the misrepresentations having
        been made…...........................................................................................................    24

III.    STANDARD FOR GRANTING SUMMARY JUDGMENT …………..……….    25

IV.    CONCLUSION: SUMMARY JUDGMENT SHOULD BE GRANTED ………...    25

<u>TABLE OF AUTHORITIES</u>

**<u>Federal Authorities</u>**

**United States Constitution**

Article IV, Section I …………………………..………………… 8

**Federal Statutes**

11 U.S.C. 523(a)(2)(A)…………………………..…………………     1, 3, 9, 10, 11, 12,
13, 14, 15, 19, 20,
21, 22, 23, 24, 25, 26

28 U.S.C. § 1738 …………………………………………………     8, 9

**Federal Cases**

*Affiliated Ute Citizens v. United States,*
    406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) ………….. 22

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)………… 25

*In re Apte,*
    96 F.3d 1319 (9th Cir. 1996)…………………………………. 22

*Chiarella v. United States,*
    *445 U.S. 222, 100, S.Ct. 1108, 63 L.Ed.2d 348 (1980)* ……….. 15

*Cohen v De La Cruz,*
    523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ………. 14, 24

*De La Cruz v. Cohen (In re Cohen),*
    185 B.R. 171 (Bankr.D.N.J.1994) …………………………….. 13, 19, 20

*De La Cruz v. Cohen (In re Cohen),*
    185 B.R. 180 (Bankr.D.N.J.1995) …………………………… 13

*De La Cruz v. Cohen (In re Cohen),*
    191 B.R. 599 (D.N.J.1996)…………………………………… 13

*De La Cruz v. Cohen (In re Cohen),*
    106 F.3d 52 (3d Cir.1997) ……………………………………. 13

*In re Docteroff,*
    133 F.3d 210 (3d Cir.1997) ……………….............................. 15, 25

*Field v. Mans,*
 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) …………          14

*Grogan v. Garner,*
 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ………     9, 14, 24

*In re Jacobs,*
 381 B.R. 128 (Bankr.E.D.Pa. 2008) ……………………………          2

*Knauss v. Dwek,*
 289 F.Supp.2d 546 (D.N.J.2003) ……..……………….          25

*In re Mayer,*
 51 F.3d 670 (7th Cir.1995) …………………………....……………...          13

*In re Reath,*
 368 B.R. 415 (Bankr. D.N.J. 2006) ……………………...............     10, 11, 14

*In re Reynolds*,
 193 B.R. 195  (D.N.J.1996) ……………………………………          15, 20

*In re Tallant,*
 207 B.R. 923  (Bankr.E.D.Cal.1997) ………………….... ………….          17

*In re Tallant*
 218 B.R. 58 (9th Cir. BAP 1998) ……………………………..          17

*In re Tulloch,*
 373 B.R. 370 (Bankr.D.N.J. 2007) …………………………..          8, 9

*In re Van Horne,*
 823 F.2d 1285  (8th Cir. 1987) ……………….......................          20

**Federal Court Rules**

D.N.J. L.B.R. 1001-1(A) …………..…………………………..          4
Federal Rule of Civil Procedure 56(c) ……………………………          25
Federal Rule of Bankruptcy Procedure 4005 …………………………..          14
Federal Rule of Bankruptcy Procedure 7056 ………………………….          25
*L.Civ.R. 56.1* ……………………………………………………          4

## <u>State Authorities</u>

**State Statutes**

N.J.S.A. 45:15-1, New Jersey Real Estate License Act  ………..           15, 17
N.J.S.A. 45:15-6 …………………………………………...                               17
N.J.S.A. 52:14B-1,  Administrative Procedure Act ……………….             17
N.J.S.A 56:8-1, New Jersey Consumer Fraud Act ………………..            3, 8
N.J.S.A 56:8-2, New Jersey Consumer Fraud Act  ……………...          2, 10, 21

**Administrative Code Sections**

N.J.A.C. 11:5-6.4 …………………………………..………...        17, 18, 23, 24

**State Cases**

*Cox v. Sears Roebuck & Co.,*
   138 N.J. 2, 647 A.2d 454 (1994) ………………………………           10, 21

*In re Dawson,*
   136 N.J. 1, 641 A.2d 1026 (1994) ………………....................            9

*Strawn v. Canuso,*
   140 N.J. 43, 657 A.2d 420 (1995) ………………………………           16

*Weintraub v. Krobatsch,*
   64 N.J. 445, 317 A.2d 68 (1974) ………………………….…..           16

## <u>Other Authorities</u>

Restatement (Second) of Torts, § 4………………….....................         16
Restatement (Second) of Torts, § 236  …………..………………         16, 23
Restatement (Second) of Torts, § 551……………………………         15, 19, 24

## **DISCLOSURE OF MOTION FILED IN SIMILAR BANKRUPTCY CASE**

An similar Motion was filed by the Plaintiffs before this Court in the Chapter 7 Bankruptcy Case of H. Donald Stewart, Case No. 08-10035 (JHW), under Adversary proceeding Number 08-10035 (JHW). The Motion resulted in an "Order Granting Motion For Summary Judgment And Holding Debt Non-Dischargeable For Fraud In Favor Of Plaintiff And Against Defendant." That Order was entered on October 10, 2008, and is found at Document # 12 on the Clerk's Adversary Proceeding Docket.

The Debtor in that case and the Debtor in this case worked together as realtors for sellers at the Century 21 Stewart Agency. They were co-defendants in a pre-petition State Court case filed by the Plaintiffs herein, and a Final Judgment was entered against both of them under the New Jersey Consumer Fraud Act, *N.J.S.A 56:8-1* et seq. The State Court Order in part reads as follows:

> "A money judgment shall be and is hereby entered in favor of the plaintiffs and against the defendants Century 21 Stewart Agency, H. Donald Stewart, Jr. and Nicholas Azeglio, jointly and severally, in the amount of $814,136.29…" (See Exhibit H).

This Motion, the Memorandum of Law, the Certification, and attached Exhibits are based upon that Order, and are essentially the same as the Motion for Summary Judgment granted in the H. Donald Stewart Jr. bankruptcy matter.

The Plaintiffs do not seek to burden this Court by filing a similar Motion. Rather, it is filed on the Plaintiffs' desire to establish the same legal principles in this bankruptcy case that the Court last year applied in the other.

## PRELIMINARY STATEMENT

The Plaintiffs were defrauded in a real estate transaction.

The Debtor, a licensed New Jersey real estate broker associated with the Century 21 Stewart Agency, the Sellers' realtor, committed pre-petition fraud.  He defrauded Daniel Grumbine and Graham Bottrell, Jr. ("Plaintiffs" and "Buyers") when they bought 26 Birchwood Place, in Logan Township, New Jersey (the "Property") in the summer of 2004. His fraud consists of the willful non-disclosure of a heating oil tank he knew was buried on the Sellers' Property.

The Debtor knew about the tank.  He also knew his clients lied to the Plaintiffs about it.  And yet, as a real estate broker for the sellers, he hid his knowledge and said nothing to the Plaintiffs when they bought the Property.

When the Plaintiffs found out about the tank after settlement, it was unearthed and found to be leaking heating oil.

The damage caused by the Debtor's fraud is massive.  It includes the environmental pollution cost of cleaning up heating oil spreading underground around the house.

A Final Judgment was entered in State Court against the Debtor for the cost of cleanup, trebled, in the amount of $814,136.29, and is Claim number 14-1 on this Court's Claims Register.

The Plaintiffs now file this motion for the entry of judgment in their favor on Count One of their Complaint Objecting to Discharge, holding the entire amount of their claim non-dischargeable due to Debtor's fraud, under *11 U.S.C. 523(a)(2)(A)*.

## **PROCEDURAL STATEMENT**

Issues between the Debtor and Plaintiffs were actually litigated to a final judgment in another Court prior to this Bankruptcy.

The Plaintiffs filed suit in the Superior Court of New Jersey, Gloucester County, Law Division, under Docket No. GLO-L-1212-05, entitled *Daniel K. Grumbine and Graham P. Bottrell, Jr., Plaintiffs v. H. Donald Stewart, Jr., et al*.  Various claims were made against the Debtor, and others, including common-law fraud and violations of the New Jersey Consumer Fraud Act, N.*J.S.A 56:8-2, et seq.*  (See Exhibit F attached to Plaintiffs' Certification).

The Debtor participated in the State Court litigation.  He filed an Answer, Separate Defenses, Cross-Claim and Third-Party Complaint.  (See Exhibit G).  The Debtor also participated in at least four depositions, including his own, and filed an opposition to a Motion for Summary Judgment.

A bench trial was conducted by the Superior Court on September 26, 2007.  The Debtor did not appear at Trial.

At the conclusion of the Trial, the Superior Court Judge, the Hon. Anne McDonnell, J.S.C. made findings of fact and conclusions of law, on the record.  A true copy of the Transcript of the Court's Decision is annexed to the Plaintiff's Certification as (See Exhibit A). [1]

---

1   A Bankruptcy Court may take judicial notice of the matters of record in the state courts within its jurisdiction. *In re Jacobs, 381 B.R. 128, 132 (Bankr.E.D.Pa. 2008)*

Final Judgment was entered as a result against the Debtor, and others, under the New Jersey Consumer Fraud Act, *N.J.S.A 56:8-1 et seq.*    The Judgment amount is $772,419.00, plus $41,717.29 fees and costs, for a total of $814,136.29. (See Judgment, attached as Exhibit H to Plaintiffs' Certification).

The Judgment remains unpaid.

The Debtor filed this Chapter 7 Bankruptcy proceeding on January 2, 2008.    In response, the Plaintiffs filed a Complaint Objecting to the Debtor's Discharge.    The Complaint contains a First Count seeking to hold the entire amount of the Final Judgment non-dischargeable for fraud under *11 U.S.C. 523(a)(2)(A).*

## CERTIFIED STATEMENT OF MATERIAL FACTS NOT IN DISPUTE, PURSUANT TO *L.CIV.R. 56.1* AND *D.N.J. LBR 1001-1(A)*

The facts relevant to the Motion are set forth in the Certification Statement of Material Facts Not in Dispute of Daniel Grumbine and Graham Bottrell, Jr. ("Movants"), a copy of which has been filed and served herewith.

The Statement of Material Facts Not in Dispute under *L.Civ.R. 56.1* and *D.N.J. L.B.R. 1001-1(A)* contains three types of evidence: (1) State Court Findings of Law and Fact, (2) certified statements of direct knowledge of the Plaintiffs, and (3) Documents.

The allegations of that Certification are incorporated herein by reference as if more fully set forth at length to avoid unnecessary repetition.

## <u>LEGAL ARGUMENT</u>

## I.    <u>THE DOCTRINE OF ISSUE PRECLUSION APPLIES TO THIS CASE</u>

### (A).    The Debtor Denies Issues Decided in a Prior Litigation.

The Debtor filed an Answer to the Complaint Objecting to Discharge.    That Answer either denies, or does not admit, that a neighbor faxed a letter dated July 8, 2004, to the Debtor's Agency, expressing her concern that potential buyers of the Property were not being fully informed of the underground oil tank located on the Property (See paragraph 13(e) of Debtor's Answer, corresponding to the paragraph 13(e) in Plaintiffs' Complaint Objecting to Discharge,); that he knew about the underground oil tank on the Property (See paragraph 16 of Debtor's Answer, corresponding to the paragraph of the same number in Plaintiffs' Complaint Objecting to Discharge,),  that he had a duty to disclose the presence of the tank but did not do so (paragraph 16 of Debtor's Answer), that he obtained money from his fraud (paragraph 25), that the Plaintiffs were damaged by his actions (paragraph 26).

The Debtor even *refuses to admit that the Superior Court conducted a bench trial and entered a verdict against him* (See paragraph 23 of Debtor's Answer, corresponding to Paragraph 23 of Plaintiffs' Complaint).

These denials by Debtor cover issues already decided in prior litigation. The earlier findings of fact and conclusions of law are set forth below.

### (B).    Summary of Issues Previously Decided by State Court.

These allegations echo those raised in the State Court Complaint (Exhibit F), and the

Defenses in the Debtor's State Court Answer (Exhibit G).  They were decided by the State

Court.  A summary of the findings set forth in the Transcript of the Court's Decision, are

grouped as follows:

*Court Findings:  Agreement of Sale Giving Rise to Duty*

a.      In June 2004, the Century 21 Stewart Agency listed the Property for sale on behalf of Sellers, Richard and Linda Dunn.  The asking price was $177,900.00.  ("Transcript" at Page 3, Lines 4-6, and annexed hereto as Exhibit A. )

*Debtor's Status*

b.      The Debtor was the "…seller's realtor."  (Transcript Page 6, lines 2-3).

c.      That Plaintiffs and Sellers Richard and Linda Dunn signed an Contract of Sale with the Sellers dated July 11, 2004.  (Transcript Page 3, Lines 7-10; see also Contract, Exhibit  B).

*Court Findings:  Sellers' knowledge of Tank*

d.      That the Beckett Development in which the Property was located had an ongoing problem or concern with underground storage tanks, such that the Beckett Homeowners Association issued to all homeowners on or about May 9 of 2003, a letter advising them and enclosing an application for grants or loans to remove underground storage tanks and also a homeowner's guide to cleaning up heating oil discharges and a Memorandum of Agreement.  (Transcript Page 3, Lines 25-26, and Page 4, Lines 1-7).

e.      That Ann Marie Carrozza and her husband, Robert Carrozza were neighbors to the 26 Birchwood Place Property.  (Transcript Page 4, Lines 19-21).

f.      That the Seller Mrs. Dunn "… knew or should have known of a duty to disclose the potential that there was an underground storage tank in the area" because of her conversation with Mrs. Carrozza, and the former owner of the Property Mrs. Davis. (Transcript Page 5, Lines 7-11).

6

### *Court Findings:  Sellers' Misrepresentation*

g.       That the Plaintiffs received a Sellers' Disclosure Statement as part of the Agreement of Sale that did not disclose the existence of an underground storage tank on the Property.  (See Court finding, Transcript Page 3, Lines 13-15; see also Disclosure Statement, Exhibit C).

h.       That the Disclosure Statement asked the Sellers, at question number 43:  "Are you aware of any underground fuel tanks on the property?" The Sellers wrote "No."  (See Court finding, Transcript Page 3, Lines 16-20).   In addition, the Disclosure Statement asked the Sellers, at question number 67: "Are you aware of any present or previous underground storage tank or toxic substances?"  Again, the Sellers wrote "No."  (See Court finding, Transcript Page 3, Lines 21-24; see also Disclosure Statement Exhibit C).

i.       That the Disclosure Statement does not disclose the Sellers' knowledge about the existence of the tank.  (See Court finding, Transcript Page 3, Lines 16-18).

### *Court Findings:  Debtor's Knowledge of Tank,*
### *and Debtor's Knowledge of Sellers' Misrepresentation to Plaintiffs*

j.       That the neighbors, Mr. and Mrs. Carrozza, sent a letter dated July 8 of 2004, to 23 Century 21 Stewart Agency at 14 Village Center Drive in 24 Swedesboro, to the attention of the Debtor stating that:  "Rumors are spreading in the neighborhood that your agency, which has the listing for 26 Birchwood Place has full knowledge that there's an abandoned, non-operative underground oil storage tank on the property and that this fact is not being disclosed."  (See Transcript Page 4, Lines 17-26, and Page 5, Lines 1-6; see also Letter dated July 8, 2004, Exhibit D).

k.       The Court found that "… I am satisfied from the information that was available to Mr. Azeglio and to Mr. Stewart, who I take it is a principal of Don Stewart -- or Century 21 Stewart Agency.  That both Azeglio and Stewart knew or should have known of the duty to disclose the potential for existence of an underground storage tank at this property."  (Transcript Page 7, Lines 3-10).

l.       The Court further found, that  "So that here, it seems reasonable to infer that *Mr. Azeglio knew of the existence or the likely existence of an underground storage tank and affirmatively withheld that information*." (See Transcript, page 8, lines 10-13). [emphasis added].

### *Court Finding Against Debtor as to Consumer Fraud*

m.       The Court further found:  "So that I would find both the agency and Mr. Stewart *and Mr. Azeglio have violated the Consumer Fraud Act*, by the activity in connection with the failure to disclose and the - the failure to disclose the potential

and probable existence of the underground storage tank the failure to get a proper metal detector." (See Transcript, page 8, lines 17-23.)

### *Court Finding as to Damages Caused by Consumer Fraud*

n.      The Court itemized the various damages caused by the Debtor's Fraud, and that the total ascertainable damages awarded were $257,473. (See Transcript Page 9, lines 1-26, and Page 10, lines 1-12).

o.      The Court trebled the amount under the Consumer Fraud Act for a total of $772,419. (See Transcript, page 10, lines 11-12).

p.      The Court invited the Plaintiffs' attorney to "… submit an Affidavit of Services and Costs because under the Consumer Fraud Act, they would be added to the verdict, as well." (See Transcript, page 10, lines 13-15).

q.      The Court awarded of Attorneys Fees and expenses of litigation under N.J.S.A 56:8-1, plus the $772,419.00, for a total award of $814,136.29, set forth in the Final Judgment. (See Exhibit H).

Despite these detailed findings, the Debtor's Answer signals his intention to relitigate all of these issues.

### (C).    Foundational Law of Issue Preclusion.

Issue preclusion (sometimes called collateral estoppel) bars relitigation of issues that have been actually litigated, and the doctrine applies in federal cases following earlier state court decisions. It arises as a function of the Full Faith and Credit Clause of *Article IV, Section I* of the U.S. Constitution, and the Full Faith and Credit Statute, *28 U.S.C. § 1738*. *In re Tulloch, 373 B.R. 370, 382 (Bankr. D.N.J. 2007)*.

State Court judgments under *11 U.S.C. § 1738* must be given the same full faith and credit in every court within the United States, including the federal courts, as they have by

law or usage in the courts of such State.  "Barring some overriding precept (i.e., an exception read into the Capital Statute), the Superior Court judgment is to be given the same effect in this Bankruptcy Court as would be given in the jurisdiction of its issue."  *In re Tulloch, supra, at 382.*

The debtor is barred from relitigating these issues in this adversary proceeding, for the reasons set forth below.

### (D).    The Five-Part Test for Application of Issue Preclusion.

Issue preclusion principles, "... do indeed apply in discharge exception proceedings pursuant to Section 523(a)." *Grogan v. Garner, 498 U.S. 279, 285, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991).*  Under the Full Faith and Credit Act, *28 U.S.C. § 1738,* the law of the State of New Jersey is used to determine the preclusive effect, if any, of the findings in the state court litigation in this case.  *In re Tulloch, supra, 373 B.R. at 382.*  In order to bar relitigation of issues, New Jersey Courts require that the party asserting the doctrine show that:

>   (1)    The issue to be precluded is identical to the issue decided in the prior proceedings;
>
>   (2)    The issue was actually litigated in the proceeding;
>
>   (3)    The court in the prior proceeding issued a final judgment on the merits;
>
>   (4)    The determination of the issue was essential to the prior judgment; and
>
>   (5)    The party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

See *In re Dawson, 136 N.J. 1, 20, 641 A.2d 1026, 1034-1035 (1994).*

**First Element of Issue Preclusion.**    All of the issues to be precluded here are identical to those decided in   prior litigation.   Listed above is a summary of the various findings of fact and conclusions of law rendered by the State Court.  They include  findings as to (a) the agreement of sale giving rise to Debtor's duty, (b) the sellers' knowledge of tank, (c) the sellers' misrepresentation, (d) the Debtor's knowledge about the tank, (e) the Debtor's knowledge of sellers' misrepresentation to plaintiffs, (f) a finding as to consumer fraud, and (g) the damages caused by consumer fraud.

These findings provide answers to the issues that must be determined by this Court under *11 U.S.C. 523(a)(2)(A)*.  To find a debt non-dischargeable due to fraud, the federal statute requires the Bankruptcy Court to determine that (1)  the debtor made a misrepresentation; (2)  that the debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3)  that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representation; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.  *In re: Reath, 368 B.R. 415, 422 (Bankr. D.N.J. 2006)*.

Both Complaints allege some form of fraud as their theories of recovery.  And while it is true that the Final Judgment was delivered under the New Jersey Consumer Fraud Act, *N.J.S.A. 56:8-2 et seq.*, the theories for recovery are the same when they are based on non-disclosure.

For example, the New Jersey Consumer Fraud Act applies to an "... omission of any material fact *with intent that others rely upon such concealment*, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate..." *N.J.S.A. 56:8-*

*2.* [emphasis added].   On this plain language, the New Jersey Supreme Court has held that "... when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* and essential element of the fraud." _Cox v. Sears Roebuck & Co. 138 N.J. 2, 18, 647 A.2d 454 (1994)._

Therefore, the New Jersey Consumer Fraud Act requires the same proof of intent also required under the third element of the federal test for fraud under *11 U.S.C. 523(a)(2)(A)* – i.e. a Plaintiff must show in the bankruptcy case that the fraud was made "…with the intention and purpose of deceiving the creditor." _In re: Reath, 368 B.R. 415, 422 (Bankr. D.N.J. 2006)._   (See below for a complete analysis of all elements of the bankruptcy test required under *523(a)(2)(A)*).   In short, there is no functional difference between the State and Federal law on this point.

There is an identity of issues in both actions.   They include the Debtor's duty to disclose, breach of that duty through silence or omission, knowledge of the falsity caused by the omission, the intent that others rely on the concealment or omission, and that the omission or concealment caused damaged to the Plaintiffs (For the purpose of this motion, the "justifiable reliance" element of *523(a)(2)(A)* is satisfied by the *materiality* of the information, as this is a fraud-by-silence case.   "Justifiable reliance" based on materiality is discussed below, at pages 22-24).   A repetition of the issues will cause a needless "second round" of litigation, unless the State Court Findings on these points are given full faith and credit.

**Second Element of Issue Preclusion.**   The second element of issue preclusion is that the issues were actually litigated.   In the State case, the Debtor filed an answer, third party complaint, and separate defenses in the state court litigation (See Exhibit G).   In

addition, he participated in several depositions, including his own, and filed at least one opposition to a motion for summary judgment by co-defendants.

This case was therefore actually litigated in the State Court. The Debtor's non-appearance at trial does not change this conclusion.

**Third Element of Issue Preclusion.** The third element of issue preclusion is satisfied because the Superior Court issued a final judgment on the merits against the Debtor.

**Fourth Element of Issue Preclusion.** Next, the fourth element of the test for issue preclusion is satisfied because a determination of the issue was essential to the prior judgment. As stated above, under "First Element of Issue Preclusion", the requirement to prove knowledge and intent is identical under the New Jersey Consumer Fraud Act, in cases of omission (i.e. non-disclosure), as well as the relevant law applicable to fraudulent representations under federal *523(a)(2)(A)* (see below).

**Fifth Element of Issue Preclusion.** Finally, the fifth element of issue preclusion is satisfied, because the party against whom the doctrine is asserted, namely the Debtor, was a party in the earlier Superior Court litigation.

**Summary of Issue Preclusion Analysis.** The Plaintiffs respectfully submit that the requirements of issue preclusion have been met, and the Debtor is precluded from relitigating any of the findings of fact and conclusions of law made by the Superior Court.

## II.    THE DEBT SHOULD BE HELD NON-DISCHARGEABLE  FOR FRAUD,

## UNDER 11 U.S.C. § 523(a)(2)(A)

### (A).  Requirements of 11 U.S.C. § 523(a)(2)(A).

Not all debts owed by an individual debtor are discharged in bankruptcy.  Certain

debts, listed in *§ 523(a)(2)(A)* of the Code, are excepted from discharge.  While it is true

that exclusions from dischargeability should be narrowly construed, they do serve vital

functions.  "Congress concluded that preventing fraud is more important than letting

defrauders start over with a clean slate...", *In re Mayer, 51 F.3d 670, 674 (7th Cir.1995)*

[Citation omitted].

Under *§ 523(a)(2)(A)* of the Bankruptcy Code, debts created by fraud are non-

dischargeable.  That statute says, in relevant part:

> (a) a discharge under §727, 1141, 1228(a), 1228(b), or 1328(b) of this
> Title does not discharge an individual debtor from any debt --
> ...
>
> (2) for money, property, services, or an extension, renewal or refinancing
> of credit to the extent obtained by --
>
> (A) false pretenses, a false representation, or actual fraud, other than a
> statement respecting the debtor's or insider's financial condition.  *11
> U.S.C. §523(a)(2)(A).*

In order to establish non-dischargability under the "false representation" clause of §

523(a)(2)(A), the plaintiffs must show that:

> (1)  the debtor made the misrepresentation;
>
> (2)  that the debtor, at the time of the transaction, had knowledge of the
> falsity of the misrepresentation or reckless disregard or gross recklessness
> as to its truth;;

(3)  that he made them with the intention and purpose of deceiving the creditor;

(4)  that the creditor relied on such representation; and

(5)  that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

See *De La Cruz v. Cohen (In re Cohen), 185 B.R. 171, 177 (Bankr.D.N.J.1994);  De La Cruz v. Cohen (In re Cohen), 185 B.R. 180, 186 (Bankr.D.N.J.1995)* [citations omitted], *aff'd, 191 B.R. 599 (D.N.J.1996), aff'd, 106 F.3d 52 (3d Cir.1997); cert. granted, 521 U.S. 1152, 118 S.Ct. 30, 138 L.Ed.2d 1060 (1997), aff'd 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998)*.   See also *In re: Reath, supra, 368 B.R. at 422 (Bankr. D.N.J. 2006).*

The burden of establishing fraud under *§ 523(a)(2)(A)* falls upon the plaintiff under Federal Rule of Bankruptcy Procedure 4005, and the standard of proof is by a preponderance of the evidence.   *Grogan v. Garner, 498 U.S. 279, 287-88, 111 S.Ct. 654, 659-60, 112 L. Ed. 2d 755 1991)*.

The meaning of the words  "false pretenses", "false representation", and "actual fraud" in *§ 523(a)(2)(A)* "…incorporates the general common law of torts, the dominant consensus of common-law jurisdictions, rather than the law of any particular state." *Field v. Mans, 516 U.S. 59, 71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995)*.

The Debtor's conduct in this case constitutes a "false representation" under *§ 523(a)(2)(A)*.   The evidence submitted in this Motion satisfies the Plaintiff's burden of proving it, for the reasons set forth below.

### (B).  The First Element of the 523(a)(2)(A) test:
### The Debtor Made the Misrepresentation.

The first element of the test for "fraudulent representation" requires proof that the Debtor made a "misrepresentation" to the Plaintiffs in the first place.  On this point, the Superior Court found that the Debtor " … *knew of the existence or the likely existence of an underground storage tank and affirmatively withheld that information*."  (See Transcript, page 8, lines 10-13, annexed as Exhibit A).

This is a fraud-by-silence case, a failure to disclose in the face of a duty to do so. The Third Circuit has held that "… a finding of fraud does not require an affirmative statement by [the Debtor] of his purpose in the diversion and may be predicated on a failure to disclose that material fact…. Bankruptcy courts have overwhelmingly held that a debtor's silence regarding material fact can constitute a false representation actionable under §523(a)(2)(A)."  *In re Docteroff, 133 F.3d 210, 216 (3d Cir.1997)* [citations omitted].

The *Restatement (Second) of Torts,* § 551 treats this kind of silence as though the affirmative misrepresentation were actually made:

§ 551.  Liability For Nondisclosure.

(1)  One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other *as though he had represented the nonexistence of the matter that he has failed to disclose*, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question. [emphasis added].

The Debtor knew of the misrepresentation about the oil tank, and said nothing to the Buyers.  The common law described in §551 of the Restatement treats the Debtor as though he told the Plaintiffs no oil tank was buried on the Property.

But this treatment under §551 depends on the whether the Debtor was under some duty to disclose the presence of the tank first place.  "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak."  *In re Reynolds, 193 B.R. 195, 202 (D.N.J.1996),* citing a securities fraud case, *Chiarella v. United States, 445 U.S. 222, 234-35, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980).*

 The Debtor in this case was under a duty to speak, for the following reasons.

**The Debtor's Common Law Duty to Disclose Information.**  The Debtor was licensed to sell real estate under the New Jersey Real Estate License Act, *N.J.S.A. 45:15-1, et seq.*  As a Seller's broker, did he have a duty to disclose material information to the Buyers?

The Plaintiffs assert that he did.  The New Jersey Supreme Court has examined the common law that applies to the duty of a real estate broker representing a seller.  In *Weintraub v. Krobatsch, 64 N.J. 445, 454-55, 317 A.2d 68 (1974),* the Court ruled that a broker representing the seller would be liable for non-disclosure of on-site conditions if those conditions were known to the broker, and not readily observable by the buyer.  This duty is owed to a *buyer*, and is true even when the broker is the *seller's* agent.  See also *Strawn v. Canuso, 140 N.J. 43, 60, 657 A.2d 420 (1995),* which amplified the doctrine, and extended a broker's liability to speak when the broker has knowledge of off-site conditions.

Since the Debtor here "… knew of the misrepresentation" about the oil tank, common law, as defined in New Jersey, did not allow the Debtor to remain silent.  It required him to speak, and to disclose the presence of the tank to the Plaintiffs.

**The Debtor's Statutory Duty.**  The Debtor's duty is also found in, and defined by, New Jersey Statutes and Regulations.

The *Restatement (Second) of Torts, § 4* provides that "The word "duty" is used throughout the Restatement of this Subject to denote the fact that the actor is required to conduct himself in a particular manner…", but it does not describe the *source* of that duty.

However, the *Restatement (Second) of Torts, § 236*, states that the source of duty will arise when information is required by statute:

> § 236. Information Required By Statute
>
> If a statute requires information to be furnished, filed, recorded or published for the protection of a particular class of persons, one who makes a fraudulent misrepresentation in so doing is subject to liability to the persons for pecuniary loss suffered through their justifiable reliance upon the misrepresentation in a transaction of the kind in which the statute is intended to protect them.

Comment *h* to this section also provides that "The rule stated in this Section includes administrative regulations and other governmental orders issued pursuant to a statute."

This section is not confined to information filed with the government.  It applies to any information that must be furnished, such as information that the California Rules of Professional Conduct require an attorney to supply to a client.  *In re Tallant, 207 B.R. 923, 932 n.6 (Bankr.E.D.Cal.1997),* rev'd in part on other grounds, *218 B.R. 58 (9th Cir. BAP 1998).*

The Debtor was regulated in this sale by a licensing system established under the New Jersey Real Estate License Act, *N.J.S.A. 45:15-1, et seq.*  Under the Act, the New Jersey Real Estate Commission is authorized to "… promulgate necessary rules and regulations pursuant to the 'Administrative Procedure Act', P.L. 1968, c. 410 (C. 52:14B-1 et seq.)".  See *N.J.S.A. 45:15-6* entitled "President; Rules and Regulations, Compensation."

With that authority, the New Jersey Real Estate Commission adopted rules, codified in the New Jersey Administrative Code. The Code contains a Subchapter 6, titled "Conduct of Business," under Title 11, Chapter 5 of the Real Estate Commission. Subchapter 6 includes Code section *11:5-6.4*, "Obligation of Licensees to Public and Each Other."

*N.J.A.C. 11:5-6.4* is relevant to the Debtor's duty in this case. Paragraph (a) in that section obligates a broker to deal fairly with all parties to a transaction:

"11:5-6.4 Obligation of licensees to public and to each other.

(a) All licensees are subject to and shall strictly comply with the laws of agency and the principles governing fiduciary relationships. In accepting employment as an agent, the licensee pledges himself to protect and promote, as he would his own, the interests of the client or principal he has undertaken to represent; this obligation of absolute fidelity to the client's or principal's interest is primar*y but does not relieve the licensee from the obligation of dealing fairly with all parties to the transaction*." [Emphasis added].

Further, at Paragraph (b), the broker has a duty to ascertain material facts about the Property:

(b) Every licensee shall make reasonable effort *to ascertain all material information concerning the physical condition of every property* for which he or she accepts an agency or which he or she is retained to market as a transaction broker, and concerning the financial qualifications of every person for whom he or she submits an offer to his or her client or principal. Information about social conditions and psychological impairments as defined in (d) below is not considered to be information which concerns the physical condition of a property.

1. A reasonable effort to ascertain material information shall include at least:

i. Inquiries to the seller or seller's agent about any physical conditions that may affect the property; and

ii. A visual inspection of the property to determine if there are any readily observable physical conditions affecting the property.

2. As used in this section, information is "material" if a reasonable person would attach importance to its existence or non-existence in deciding whether or how to proceed in the transaction, or if the licensee knows or has reason to know that the recipient of the information regards, or is likely to regard it as important in deciding whether or how to proceed, although a reasonable person would not so regard it. [Emphasis added].

18

Finally, under Paragraph (c), the broker has an affirmative duty to disclose that information to any other party to the transaction. This includes buyers like the Plaintiffs:

> (c) *Licensees shall disclose all information material to the physical condition of any property which they know or which a reasonable effort to ascertain such information would have revealed to their client or principal and when appropriate to any other party to a transaction.* Licensees shall also disclose any actual or potential conflicts of interest which the licensee may reasonably anticipate. [Emphasis added].

Here, the Debtor obtained "material information" through the Disclosure Statement, and the Superior Court found that the Debtor knew of the Sellers' representations, and misrepresentations, contained in it.

Once the Debtor acquired this knowledge, he had a duty to disclose it because under *N.J.S.A. 11:5-6.4(c)*. Paragraph (a) of that section further imposes upon the Debtor the "obligation of dealing fairly with all parties to the transaction." The Debtor in this case did not.

**Summary of The First Element of the 523(a)(2)(A) test:**   The Plaintiffs do not claim that the doctrine of *caveat emptor* is banished from all transactions. But they do believe that *caveat emptor* is a dead letter when brokers sell real estate in New Jersey.

Real estate Brokers such as the Debtor must speak, even if they are seller's agent, and have a duty to disclose all material facts about a Property to buyers. Once this duty is triggered, and the Debtor breaches that duty, then § 551 of the Restatement treats him "… *as though he had represented the nonexistence of the matter that he has failed to disclose…"*   The Debtor therefore made a misrepresentation to the Plaintiffs under the first element of the *523(a)(2)(A)* test. In the eyes of the common law, as described in the Restatement, it is as though Debtor said to them: "No oil tank is on the Property."

And that statement was false.

### (C).  The Second Element of the 523(a)(2)(A) test:
### Knowledge of the Falsity of the Representations

The Superior Court found that the Debtor knew of the misrepresentation about the oil tanks.  This is another way of saying the Debtor had knowledge of the falsity of the Seller's misrepresentation.  His silence under the *Restatement (Second) of Torts,* § 551 is the same as an affirmative representation that the Property had no tank.  His concealment of that knowledge establishes he knew it was false and meant to keep it from the Plaintiffs.

Alternatively, a showing of reckless indifference to the truth will be sufficient to satisfy the knowledge element. *De La Cruz v. Cohen (In re Cohen), supra, 185 B.R. at 177*. "A court may find recklessness based on a pattern of conduct or behavior." *Id, at 177* [citations omitted].  The continued silence of the Debtor induced the Plaintiffs to go through with the sale, is precisely the kind of pattern or conduct of behavior evidencing a knowing or reckless indifference to the truth.

Therefore, the evidence establishes this part of the *523(a)(2)(A)* test.

### (D).  The Third Element of the 523(a)(2)(A) test:
### That the Debtor Made the Representation,
### with the Intention and Purpose of Deceiving the Creditor.

"Because direct proof of intent (*i.e.,* the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Reynolds, supra, at page 200,* citing *In re Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987)* [further citations omitted].  And further, "When the creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor "cannot

overcome [that] inference with an unsupported assertion of honest intent…. The focus is, then, on whether the debtor's actions 'appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor.'" *Van Horne, supra, at 1287-1288.*

The evidence in this case shows that the Stewart Agency was paid $5,337.00 for "Sales/Brokers Commissions." (See the HUD-1 Settlement Statement, Line 701, Exhibit E annexed to Plaintiff's Certification). This Court may infer from this "surrounding circumstance" that the Debtor meant to profit from his silence, and therefore intended to defraud the Plaintiffs.

Additional proof of intent is contained in the Final Judgment entered by the Superior Court. As stated previously (see pages 10-11 above, under "First Element of Issue Preclusion"), the Consumer Fraud Act makes unlawful an "…omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate…" *N.J.S.A. 56:8-2.* This means that "… when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud." *Cox v. Sears Roebuck & Co., supra, 138 N.J. at 18, 647 A.2d 454 (1994).*

The New Jersey Consumer Fraud Act therefore requires the same proof of intent as the third element of the federal *523(a)(2)(A)* test. There is no functional difference between the State and Federal standard on this point.

The State Court's Final Judgment is, in its essence, a judgment and finding that the Debtor made the misrepresentation with the "…intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any

merchandise or real estate." *N.J.S.A 56:8-2*.  The Judgment contains and presupposes this

finding, because the Consumer Fraud Act requires it.

As a matter of law, this is *exactly* the same as a finding that the Debtor made the

representation, with the intention and purpose of deceiving the Plaintiffs, as required under

the third element of the *523(a)(2)(A)* test.

### (E).  The Fourth Element of the 523(a)(2)(A) test:
### The creditor relied on such representation.

Like proof of intent, proof of "justifiable reliance" under *523(a)(2)(A)* is affected by

non-disclosure.  The Ninth Circuit, in *In re: Apte, 96 F.3d 1319 (9th Cir. 1996),* recognized

the difficulty in proving the reliance or causation elements in a case of fraudulent non-

disclosure, and applied the analysis used by the Supreme Court in cases involving securities

fraud:

> "...[P]ositive proof of reliance is not a pre-requisite to recovery.  All
> that is necessary is that the facts withheld be material in the sense that
> a reasonable investor might have considered them important in the
> making of this decision.   This obligation to disclose and this
> withholding of a material fact established the requisite element of
> causation in fact."  *Id*., *at 1323*, citing *Affiliated Ute Citizens v.
> United States, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d
> 741 (1972).*

The presence of the underground oil tank in this case was material to the sale. The

evidence is the Disclosure Statement itself, which asked, at Questions #43 and #67, whether

the sellers were aware of any underground storage or fuel tanks on the Property.  (See

Exhibit C annexed to Plaintiff's Certification submitted herewith).  The Answer was "No" to both.

In addition, the Contract of Sale, at Page 3, Paragraph 18, lines 235 through 237, provided the Buyers with the right to inspect the Property to check for "… environmental conditions, as defined by the New Jersey Department of Environmental Protection, negatively effecting the buildings, such as ...toxic chemicals, mold, or other pollutants in the surrounding soil, air, or under water."  (See Contract of Sale annexed to Plaintiffs' Certification as Exhibit B).

Both the Disclosure Statement *and* the Contract of Sale treated the existence of a tank, and the right to inspect the Property (should the existence of the tank be known), as material.

The New Jersey Administrative Code *N.J.A.C. 11:5-6.4(b)(2)* provides a  definition of this kind of materiality:

> "(2) As used in this section, information is 'material' if a reasonable person would attach importance to its existence or non-existence in deciding whether or how to proceed in the transaction, or if a licensee knows or has reason to know that the recipient of the information regards, or is likely to regard it as important in deciding whether or how to proceed, although a reasonable person would not so regard it."

The language of the Administrative Code uses a definition of "Materiality" very nearly identical to the common law definition in the *Restatement (Second) of Torts,* § 538.  Under either standard, information about the tank was treated by the documents as material to the sale of the Property.   And the Plaintiffs' Certification confirms they relied on the representations in the documents in order to go through with the purchase.   (See Certification, paragraph 10).

The Disclosure Statement, the Contract of Sale, the *Restatement (Second) of Torts,* §

538, and the New Jersey Administrative Code *N.J.A.C. 11:5-6.4(b)(2),* all point to a single

conclusion: that the presence of the oil tank was a material fact to the transaction. Its non-

disclosure therefore satisfies the requirement of "justifiable reliance" under the fourth

element of the *523(a)(2)(A)* test.

**(F).  The Fifth Element of the 523(a)(2)(A) test:
That the creditor sustained the alleged loss and damage as
a proximate result of the misrepresentations having been made.**

The Superior Court made findings of fact that the Debtor's fraud caused the

Plaintiffs' significant pecuniary loss. That amount was trebled under the New Jersey

Consumer Fraud Act, and the Court invited Plaintiff's counsel to submit their Affidavit of

Fees and Costs under the Act. The award of attorneys fees and costs, plus treble damages is

reflected in the Final Judgment entered by the Court in the total amount of $814,136.29.)

(See Final Judgment annexed to Plaintiff's Certification as Exhibit H).

The entire amount set forth in the Final Judgment is non-dischargeable under

*523(a)(2)(A).* The Supreme Court in <u>Cohen v. De la Cruz, supra,</u> ruled that the entire

amount of an award under the New Jersey Consumer Fraud Act will be non-dischargeable,

as *523(a)(2)(A)* bars the discharge of *all* liability arising from fraud. <u>*Id., 523 U.S. at 222,*</u>

<u>*118 S.Ct. at 1218*</u>. This reflects the "...conclusion on the part of Congress 'that the

creditors' interest in recovering full payment of debts in these categories outweighs the

debtor's interest in a complete fresh start.'" <u>Id.</u>, citing <u>*Grogan, supra, 498 U.S., at 287, 111*</u>

<u>*S.Ct., at 659-660.*</u>

Therefore the Plaintiffs submit that the entire amount of the Final Judgment entered by the Superior Court should be held non-dischargeable under *11 U.S.C. § 523(a)(2)(A)*.

## III.   <u>STANDARD FOR GRANTING  SUMMARY JUDGMENT</u>

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "…if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>*Id.*</u>  At the summary judgment stage, the role of the court "… is not to weigh evidence, but to determine whether there is a genuine issue for trial." <u>*Knauss v. Dwek, 289 F.Supp.2d 546, 549 (D.N.J.2003)*</u> citing  <u>*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986))*</u>.

## IV.   <u>CONCLUSION: SUMMARY JUDGMENT SHOULD BE GRANTED</u>

The need to establish all the elements of 523(a)(2)(A) is not a bar to summary judgment.  It is appropriate to grant summary judgment under these circumstances.  For example, the Third Circuit in <u>*Docteroff, supra,*</u> <u>*133 F.3d   at 214-216*</u>, upheld the Bankruptcy Court's grant of a summary judgment to the Plaintiff on a Complaint Objecting to Discharge, based on the fraud exception under *523(a)(2)(A)*.

In this case, the effect of issue preclusion prohibits the Debtor from relitigating any of the findings of fact and conclusions of law rendered by the Superior Court in the prior litigation.  In addition, the Plaintiffs have submitted their Certification providing evidence of matters within their direct knowledge.  Finally, they have submitted the relevant documents arising from the sale.  None of these may be disputed by the Debtor.

The sum of this evidence is that there is no genuine issue of any material fact on the issue of whether the fraud exception to discharge has been established under *11 U.S.C. 523(a)(2)(A)*.  Therefore, the Plaintiffs respectfully request that the Court grant their motion, and enter an Order that the entire amount of the Plaintiffs' Claim no. 14-1, as set forth in the State Court Final Judgment in the amount of $814,136.29, is non-dischargeable under 11 U.S.C. 523(a)(2)(A), based upon the Debtor's fraud.


Respectfully submitted,



Dated: 8/11/09                    By:____s/Thomas M. North_____
                                  Thomas M. North, Esquire
                                  Attorney for Daniel Grumbine and Graham Bottrell, Jr