NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the matter of | : | Case No. 09-16476/JHW |
| Nicholas L. Azeglio, Jr. | : | |
| Debtor | : | |
| Daniel K. Grumbine and Graham P. Bottrell, Jr. | : | Adversary No. 09-1914 |
| | : | |
| Plaintiffs | | |
| v. | : | **OPINION** |
| Nicholas L. Azeglio, Jr. | : | |
| Defendant | : | |

APPEARANCES:   Thomas M. North, Esq.
Law Office of Thomas M. North
53 Newton Avenue
Woodbury, New Jersey  08096
Counsel for Plaintiffs

Nicholas S. Herron, Esq.
Seymour Wasserstrum & Assocs.
205 Landis Avenue
Vineland, New Jersey  08360
Counsel for the Debtor

**FILED**
JAMES J. WALDRON, CLERK

November 23, 2010

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

   In this adversary proceeding, the plaintiffs Daniel Grumbine and Graham

Bottrell seek a determination that the debt due to them from the

debtor/defendant is nondischargeable under section 523(a)(2)(A) of the

Bankruptcy Code.  Because several elements of section 523(a)(2)(A) have not

been established on this record, the relief requested must be denied.

1

## **FACTS**

The plaintiffs purchased a home within a subdivision commonly known as the Beckett Development, located at 26 Birchwood Place, Swedesboro, Gloucester County, New Jersey, from Richard and Linda Dunn (the "Sellers"). Settlement on the property occurred on August 27, 2004.

Prior to the closing, the Sellers retained realtor Nicholas Azeglio, Jr., the debtor herein, from the Century 21 Stewart Agency, to list their property for sale on their behalf. The debtor was a licensed real estate agent who was familiar with the area, and with the Beckett Development in particular. He has acknowledged that prior to the time of this transaction, he had general knowledge about problems with underground fuel tanks on some properties in the Beckett Development, but he had no specific knowledge about problems of that type with the Sellers' home.

On or about June 22, 2004, the debtor presented the Sellers with a listing package, which included the requisite Disclosure Statement to be completed by the Sellers.[1] Ms. Dunn recounted that Mr. Azeglio assisted her

---

[1] Parenthetically, I note that I am accepting as true the testimony presented by the plaintiffs' witnesses, including Linda Dunn, Henry Greenemeir and Sarah McNelly, and rejecting the testimony of the debtor where that testimony is directly inconsistent with the testimony of the plaintiffs' witnesses. Particularly because the plaintiffs' witnesses

in completing the Disclosure Statement, notwithstanding the instruction in the first paragraph of the statement that the form should be completed "without the assistance of any licensed real estate broker or sales person." On question No. 43 of the form, the seller was required to answer either "yes", "no" or "unknown" to the following question: "Are you aware of any underground fuel tanks on the property?" Ms. Dunn testified that she told the debtor that she knew that there had been an underground fuel tank on the property several years earlier, because she had called a previous owner, Mr. Davis (not the immediately preceding owner), who advised her that he had not removed the underground fuel tank, but had drained it. She asked for Mr. Azeglio's advice on how to answer that question in light of her lack of knowledge about whether an underground fuel tank was still located on the property or whether it had been removed by the previous owner. He instructed her to check "no", advising her that if she was not certain about whether any underground fuel tanks existed on the property, the answer should be "no". Ms. Dunn also answered "no" to question No. 67, which

---

could be characterized as independent, since no discernible gain is achievable by any of them to influence the substance of their testimony, I can readily conclude that each of them testified credibly about the factual circumstances surrounding this transaction. By contrast, Mr. Azeglio testified emphatically that each of these witnesses was mistaken in their recollections, and that certain events recalled by the witnesses, such as Ms. Dunn's recollection regarding the completion of the Disclosure Statement, never happened. The fact that the debtor's testimony differed so sharply from the testimony of each of these three witnesses sheds substantial negative light on his credibility, and causes me to accept the version of events presented by the plaintiffs.

asked whether the Sellers were "aware of any present or previous underground storage (UST) tanks or toxic substances present on this property or adjacent property (structure or soil), such as polychlorinated biphenyl (PCB), solvents, hydraulic fluid, petro-chemicals, hazardous wastes or others?"

The plaintiffs entered into an Agreement of Sale with the Sellers on July 11, 2004. Of note in the contract, under paragraph 13, is the following statement by the seller:

> Seller states, to the best of Seller's knowledge, there ☐ is/are no underground fuel tank(s) nor have there been any removed, ☐ is/are underground fuel tank(s) on the property, ☒Unknown underground fuel tanks on the property.

Exh. P-2, ¶ 13. Of the three options to check, the Sellers selected the option which stated that they did not know about underground fuel tanks on the property. The contract appears to have been prepared by the debtor or in his office.

Following the signing of the Agreement of Sale, the debtor initiated the required regulatory process for obtaining a certificate of occupancy from the municipality. Phyllis Atkinson, the Logan Township Construction Official,[2]

---

[2] The location of the property at issue here is listed on most documents as Swedesboro, New Jersey. However, the Logan Township official was charged with the task of issuing a Certificate of Occupancy.

testified that when she visited the property, she observed that the fuel tank in use was above ground and was located in the garage. Because her records did not contain any information regarding the installation or removal of any oil tanks on the property, she asked for documentation from the debtor regarding the status of the property as to any underground fuel tanks.

Thereafter, after consultation with the Sellers, the debtor retained Greene Environmental Services, Inc. to conduct a visual inspection of the property to determine whether there were any indications of an underground fuel tank on the property. Henry J. Greenemeir, President of the company, testified that when he was contacted by the debtor, the debtor advised him that there was no underground fuel tank on the property and that the tank had been removed in the early 1990's, but that an inspection was needed to confirm the absence of an underground fuel tank. Mr. Greenemeir was also told by the debtor that the current owners did not know about the existence of any underground fuel tank on the property, and that none of the previous owners was available to provide information on the subject. Mr. Greenemeir suggested to the debtor that the use of a metal locator would be preferable to a visual inspection to ascertain more definitively whether an underground fuel tank remained on the property. The debtor's response was that because

---

There is no explanation for this discrepancy in the record.

there was no tank on the property and the use of a metal locator would be much more expensive (estimated to be about $600, versus a cost of approximately $100 for the visual inspection), he opted to limit the testing to a visual inspection of the property.[3]

Mr. Greenemeir conducted an unscheduled visual inspection on July 19, 2004, reported verbally to the debtor immediately thereafter, and presented Mr. Azeglio with a report dated July 22, 2004.  He found two copper lines penetrating the foundation of the house just below ground level, which signified the prospect that an underground fuel tank either had been or was still on the property.  He probed an area around the house and in the vicinity of the copper lines, but located no tank.

During his telephone conversation with the debtor after his visual inspection of the property on July 19th, Mr. Greenemeir informed the debtor about the two copper lines and recommended a more robust inspection using a metal locator.  The debtor's response was "send me your invoice". He declined to pursue a more rigorous inspection of the property.  Mr. Greenemeir sent the debtor his report, which the debtor passed on to Ms.

---

[3] Ms. Dunn, one of the Sellers, testified that if the debtor would have asked her about whether she would opt for the more expensive inspection, she would have emphatically answered in the affirmative.

Atkinson, the Construction Official, but which he did not share with anyone else. Ms. Atkinson was apparently satisfied with the report and issued the Certificate of Occupancy.

The plaintiffs testified convincingly that they relied on the information in the Disclosure Statement to confirm that there was no problem with an underground fuel tank on the property. The plaintiffs retained a home inspection company, but the inspection did not encompass any search for an underground fuel tank. There was no discussion between the plaintiffs or their realtor with the debtor about underground fuel tanks prior to settlement. Immediately after settlement on the property, the plaintiffs were informed by the Sellers' neighbor of the existence of an underground oil tank on the property, which fact the plaintiffs confirmed with experts. The oil tank was determined to have been leaking, requiring significant costs to remediate.

On July 18, 2005, the plaintiffs filed a complaint in the New Jersey Superior Court, Law Division, Gloucester County, Dkt. No. GLO-L-1212-05, against the debtor and others, alleging, among other things, violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. The debtor filed an answer, defenses, a cross-claim, a third party complaint, and opposition to a motion for summary judgment. He and/or his counsel also attended at least

four depositions in the state court matter.  Ultimately, however, his attorney withdrew from the case before trial, and the debtor was not noticed of the trial date, did not know about the trial date, and did not appear.

On October 9, 2007, judgment was entered against the debtor and a co-defendant reflecting treble damages in the amount of $772,419 plus attorney's fees.  Thereafter, the debtor's motion for reconsideration before the New Jersey Superior Court was denied.

The debtor filed his Chapter 7 voluntary petition on March 17, 2009. The plaintiffs filed this adversary proceeding on June 17, 2009.  The plaintiffs moved for summary judgment, which was denied by written opinion on January 27, 2010.  In re Azeglio, 422 B.R. 490 (Bankr. D.N.J. 2010).  Trial was conducted on November 16, 2010.

## DISCUSSION

Debts based upon fraud are nondischargeable under 11 U.S.C. § 523(a)(2)(A), which provides:

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
>
>        . . .

>    (2)  for money, property, services, or an extension,
> renewal, or refinancing of credit, to the extent obtained by —
>
>       (A)  false pretenses, a false representation, or
> actual fraud, other than a statement respecting the
> debtor's or an insider's financial condition.

To satisfy section 523(a)(2), the plaintiff must prove his case by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287-88, 111 S. Ct. 654, 659-60, 112 L. Ed.2d 755 (1991); In re Hilley, 124 Fed.Appx. 81, 82 (3d Cir. 2005); In re Singer, No. 10-00045(FLW), 2010 WL 3732944 (D.N.J. Sept. 17, 2010).

   Section 523(a)(2)(A) requires the plaintiff to establish that the debt was obtained by false pretenses, false representations or actual fraud. Statements regarding the debtor's financial condition are addressed in subsection (a)(2)(B). Notably, section 523(a)(2)(A) does not define the terms false pretenses, false representation or actual fraud. Nor does the section expressly refer to elements such as reliance, materiality or intent. In contrast, section 523(a)(2)(B) specifically requires the debt to be incurred through the use of a written statement:  (1) regarding the debtor's financial condition; (2) that was materially false; (3) upon which the plaintiff had reasonably relied; and (4) which the debtor made or published with the intent to deceive the creditor. In re Cohn, 54 F.3d 1108, 1114 (3d Cir. 1995). Nonetheless, courts have routinely inferred requirements establishing

9

intent, reliance and materiality in applying section 523(a)(2)(A). <u>See, e.g.</u>, <u>Field v. Mans</u>, 516 U.S. 59, 68, 116 S. Ct. 437, 443, 133 L.Ed.2d 351 (1995); <u>In re Softcheck</u>, No. 08-23844(RTL), 2009 WL 4747527, *6 (Bankr. D.N.J. Dec. 4, 2009).

The frauds covered by the terms used in section 523(a)(2)(A) are those which in fact involve "moral turpitude or intentional wrong"; "'fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.'" <u>In re Bailey</u>, 34 Fed.Appx. 150, *1 (5th Cir. 2002) (quoting <u>In re Allison</u>, 560 F.2d 481, 483 (5th Cir. 1992)); <u>In re Reath</u>, 368 B.R. 415, 422 (Bankr. D.N.J. 2006). A false representation or false pretense involves: "(1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." <u>In re Allison</u>, 960 F.2d 481, 483 (5th Cir. 1992); <u>RecoverEdge L.P. v. Pentecost</u>, 44 F.3d 1284, 1293 (5th Cir. 1995). <u>See</u> <u>In re Suarez</u>, No. 08-15732, 2010 WL 1382110, *15 (Bankr. D.N.J. Apr. 5, 2010) (false pretenses or a false representation involves creating a "false impression" or making a "false or misleading statement about something"). Actual fraud "'consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another--something said, done or omitted with the design of perpetuating what is known to be a cheat or deception.'" <u>RecoverEdge L.P.</u>, 44 F.3d at 1293 (quoting 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶

523.08[1][e] at 523-44 (15th Ed. Rev. 1997)).  See also In re Bashlow Realty Co. v. Zakai, No. 08-2040, 2010 WL 1529568, *7 n.1 (Bankr. D.N.J. Apr. 14, 2010).

    The elements of fraud are established if the plaintiff shows that:

    (1) the debtor made the misrepresentations;

    (2) that at the time he knew they were false;

    (3) that he made them with the intention and purpose of deceiving the creditor;

    (4) that the creditor relied on such representations;

    (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

In re Hashemi, 104 F.3d 1122 (9th Cir.), cert. denied, 520 U.S. 1230, 117 S. Ct. 1824, 137 L. Ed.2d 1031 (1997); In re Kirsh, 973 F.2d 1454, 1457 (9th Cir. 1992) (quoting In re Britton, 950 F.2d 602, 604 (9th Cir. 1991)).  See also In re Reynolds, 193 B.R. 195, 200 (D.N.J. 1996) and In re Cohen, 191 B.R. 599, 604 (D.N.J. 1996).

For purposes of this record, I conclude that the elements of reliance[4] and damage are established here. Our focus here is whether the debtor made a misrepresentation, whether he knew at the time he made it that it was false, and whether he made the misrepresentation with the intent and purpose of deceiving the plaintiffs.

    1.    <u>Misrepresentation</u>.

The first inquiry concerns whether the debtor obtained money, property or services through a "material" misrepresentation. <u>In re Poskanzer</u>, 143 B.R. 991, 999 (Bankr. D.N.J. 1992). <u>See also</u> <u>In re Cohen</u>, 191 B.R. 599, 604 (D.N.J. 1996), <u>aff'd</u>, 106 F.3d 52 (3d Cir. 1997), <u>aff'd</u>, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed.2d 341 (1998); <u>In re Dinter</u>, No. 93-3823, 1993 WL 484201, at *5 (D.N.J. Nov. 19, 1993), <u>aff'd</u>, 31 F.3d 1171 (3d Cir. 1994). The false representation must be sufficiently material to have caused the creditor to act where he would not have acted had he known the truth. <u>In re Dunston</u>, 146 B.R. 269, 275 (D. Colo. 1992). <u>See also</u> <u>Haxby v. National Boulevard Bank</u>, 90 B.R. 340 (N.D. Ill. 1988); <u>In re Evans</u>, 181 B.R. 508, 515 (Bankr. S.D. Cal. 1995).

---

[4] Section 523(a)(2)(A) requires "justifiable" reliance by the plaintiff. <u>Field v. Mans</u>, 516 U.S. 59, 74, 116 S. Ct. 437, 446, 133 L.Ed.2d 351 (1995). The plaintiffs' reliance in this case on the Sellers' and the debtor's representations was justified.

Where the debtor is silent on a particular matter, the courts are split about whether the debtor's silence is sufficient to constitute false representation. In the Fifth and Eleventh Circuits,

> [i]t is a generally established proposition that absent a duty imposed by law to disclose facts because of a peculiar relationship of the parties or a showing that a debtor has willfully concealed or omitted material facts requested by a creditor, a mere silence and failure to disclose material facts . . . falls far short of the requirement of the law to establish false representation.

In re Cifalia, 124 B.R. 124, 126-27 (Bankr. M.D. Fla. 1991). See, e.g., In re Wood, 571 F.2d 284 (5th Cir. 1978) and In re Hunter, 780 F.2d 1577 (11th Cir. 1986).[5] Other courts have held that a debtor's silence regarding a material fact can constitute a false representation where such silence would mislead the other side. See In re Van Horne, 823 F.2d 1285, 1288 (8th Cir. 1987); In re Bandi, No. 09-10646, 2010 WL 4024769, *2 (Bankr. E.D.La. Oct. 13, 2010) ("Bankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under Section 523(a)(2)(A)."); In re Coley, 433 B.R. 476, 491 n.20 (Bankr. E.D.Pa. 2010); In re Hanson, 432 B.R. 758, 772 (Bankr. N.D.Ill. 2010); In re Ramon, 433 B.R. 571, 580 (Bankr. N.D.Tex. 2010). Where there is a duty to speak, silence has also been found to constitute a fraudulent

---

[5] These courts conclude that the requirement of "actual or positive fraud" requires overt fraudulent representation, which conforms to the common law principle that omissions do not constitute fraudulent representation.

misrepresentation. See, e.g., In re Mercer, 246 F.3d 391, 404 (5th Cir. 2001); In re Gergely, 11 Fed.Appx. 705, *1 (9th Cir. 2000). The Third Circuit has followed the Eighth Circuit's approach that silence can rise to the level of fraud, where it pertains to a material fact. In re Docteroff, 133 F.3d 210, 216 (3d Cir. 1997); In re Trombadore, 201 B.R. 710, 714 (D.N.J. 1996), aff'd, 129 F.3d 1256 (3d Cir. 1997); see also, In re Duffy, No. 08-19126(NLW), 2010 WL 3260077, *7 (Bankr. D.N.J. Aug. 18, 2010) ("a finding of fraud may be predicated on a failure to disclose a material fact").

Here, there is serious question about whether a misrepresentation was made by the debtor, or whether the debtor's silence regarding the potential existence of an underground fuel tank on the property would constitute a false representation. The focus of our attention is question 43 on the Disclosure Statement, which requires the seller to reflect whether the seller is "aware of any underground fuel tanks on the property". The question is poorly worded, because if the seller does not know whether there is an underground fuel tank on the property, the seller could honestly answer that he/she is not "aware" of any such tanks on the property. The debtor's advice and instruction to the seller, that if she was not certain about the existence of an underground fuel tank, she should mark the answer as "no", does not necessarily constitute a misrepresentation.

Nor do subsequent events, from the time the Disclosure Statement was completed, through the closing on this property, warrant a conclusion that the debtor either misrepresented a material fact or maintained an improper silence regarding a material fact. There is no evidence on this record that the debtor actually knew of the existence of an underground fuel tank on the property. The fact that he did not order a more thorough inspection of the property might have been a grave mistake, which caused the purchaser to sustain severe damages, but it is difficult to characterize that action as a material misrepresentation.

    2.    <u>Knowledge That the Representation Was False</u>.

The second inquiry concerns whether the debtor, at the time he made the representation, knew that the representation was false, or that the representation was made with gross recklessness as to its truth. <u>In re Cohen</u>, 191 B.R. 599, 605 (D.N.J. 1996); <u>In re Dinter</u>, No. 93-3823, 1993 WL 484201, at *5 (D.N.J. Nov. 19, 1993). "[P]roof of reckless indifference to the truth will satisfy both the knowledge and intent to deceive prongs of § 523(a)(2)(A)." <u>In re Cohen</u>, 191 B.R. at 605 (citing to the Third Circuit's discussion of scienter and intent in <u>In re Cohn</u>, 54 F.3d 1108 (3d Cir. 1995)). By reckless conduct, we refer to "unreasonable conduct in disregard of a known or obvious risk from which it is highly probable that harm would

follow.'" Id. (quoting In re Woolley, 145 B.R. 830, 834 (Bankr. E.D. Va. 1991)).

> "It is usually accompanied by a conscious indifference to the consequences. In contrast, negligence is characterized as mere thoughtlessness or inadvertence or simple inattention." Hence, "[w]here the knowledge element is based on recklessness, the conduct must exceed negligence and rise to the level of reckless disregard for truth. . . . Recklessness is usually determined by a pattern of conduct." Lastly, . . . if the totality of the circumstances exhibit a debtor's reckless disregard of the truth, a finding of intent or knowledge cannot be overcome simply by an "unsupported assertion of honest intent."

Id. (citations omitted).

As noted above, the facts developed at trial did not establish that the debtor knew that an underground fuel tank remained on the property. The question becomes whether the debtor conducted the process of preparation for the closing on the property with reckless indifference to the prospect that an underground fuel tank remained on the property and could cause severe damage to the purchasers. The debtor acknowledged that he knew of problems in the Beckett Development dealing with underground fuel tanks. However, those problems were not universal. Particularly in retrospect, it is an understatement to observe that all parties would have been much better served if the debtor had highlighted the issue, had not advised the Sellers to mark "no" to question 43, had ordered a more rigorous inspection of the property, and had shared the results with all interested parties.

Nevertheless, I cannot label his conduct as reckless under the circumstances.  Accordingly, this element of section 523(a)(2)(A) fails as well.

    3.    <u>Intent to Deceive</u>.

The third inquiry concerns whether the debtor intended to deceive the creditor.  The issue of intent requires actual or positive intent.  <u>In re Carey</u>, No. 08-24396, 2010 WL 936117, *1 (D.N.J. Mar. 11, 2010).  At the time of the representation, debtor must have intended by his representation to deceive the creditor.  <u>Id.</u>; <u>In re Chen</u>, 227 B.R. 614, 626 (D.N.J. 1998) (stating that "the intent to deceive under 523(a)(2)(A) . . . requires proof of a higher level of intent than the mens rea that must be found" under state law provision that prohibits the knowledgeable making of false statements to obtain unemployment benefits); <u>In re Young</u>, 181 B.R. 555, 558 (Bankr. E.D. Okla. 1995); <u>In re Woodall</u>, 177 B.R. 517, 523 (Bankr. D. Md. 1995); <u>In re Nahas</u>, 181 B.R. 930, 933 (Bankr. S.D. Ind. 1994).  Because intent to defraud or deceive is rarely admitted, the intent to deceive may be inferred from the surrounding facts and circumstances of the case, <u>In re Van Horne</u>, 823 F.2d 1285, 1287 (8th Cir. 1987), <u>In re Reynolds</u>, 193 B.R. 195, 200 (D.N.J. 1996), and <u>In re Nahas</u>, 181 B.R. at 933, such as when the debtor makes a false representation that he knows or should know will induce the lender to make the loan.  <u>In re Nahas</u>, 181 B.R. at 933.  "The focus is . . . on

whether 'the debtor's actions "appear so inconsistent with [his] self-serving statement of intent that the proof leads the court to disbelieve the debtor."'" In re Reynolds, 193 B.R. 195, 200-01 (D.N.J. 1996) (quoting In re Horne, 823 F.2d 1285, 1287 (8th Cir. 1987)).  A showing of reckless indifference to the truth of the representations coupled with the knowledge that it would induce the loan to be made is also sufficient to satisfy an intent to deceive.  In re Cohen, 185 B.R. 171, 177 (Bankr. D.N.J. 1994).  See also In re Phillips, 804 F.2d 930, 934 (6th Cir. 1986); In re Horst, 151 B.R. 563, 568 (Bankr. D. Kan. 1993).

      Here, the surrounding facts and circumstances of the case do not support a finding of intent to deceive the plaintiffs.  If credible evidence was produced to reflect that the debtor knew of the existence of the underground fuel tank, purposely failed to disclose that information, and actively pursued a course of conduct to prevent the purchasers from discovering its existence, an intent to deceive could certainly be inferred from that circumstance.  If the environmental firm was requested to falsify their report, or was specifically restricted in its assignment regarding the extent of visual inspection, the opportunity to infer the debtor's intent to deceive might have been enhanced.  These facts and circumstances were not presented.  What was presented was a real estate agent who improperly advised the Sellers about the completion of the Disclosure Statement, when he should not have been involved in the completion process at all, and the failure of the real

estate agent to properly safeguard the interests of all parties connected to the transaction in a fair, deliberate and thorough manner.  That failure does not amount to fraud under section 523(a)(2)(A).

## CONCLUSION

In reaching the conclusion that the elements of section 523(a)(2)(A) have not been established, and that the debt at issue may be discharged, I have not overlooked the fact that I believe the debtor misrepresented the circumstances surrounding this transaction in the course of his testimony.  I am appalled by that testimony, but do not decide in this opinion what consequences should attach.  Nevertheless, accepting the plaintiffs' version of events in its entirety, I cannot sustain a non-dischargeability judgment under section 523(a)(2)(A).

Defendant's counsel shall submit an order in conformance with this opinion.

Dated:  November 23, 2010

JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT